**LAW OFFICES OF KENNETH L. BAUM LLC**
167 Main Street
Hackensack, New Jersey 07601
(201) 853-3030
(201) 584-0297 Facsimile
Attorneys for Defendant,
Educational Credit Management Corporation

| | |
|---|---|
| In re:<br><br>KEVIN JARED ROSENBERG,<br><br>Debtor. | CASE NO. 18-35379-cgm<br><br>CHAPTER 7 |
| KEVIN JARED ROSENBERG,<br><br>Plaintiff,<br><br>v.<br><br>NY STATE HIGHER EDUCATION SERVICES CORPORATION, YESHIVA UNIVERSITY, ACCESSLEX INSTITUTE d/b/a ACCESS GROUP, and EDUCATIONAL CREDIT MANAGEMENT CORPORATION,<br><br>Defendants. | ADV. PRO. NO. 18-09023-cgm<br><br>**Hearing Date: October 29, 2019, at 10:00 a.m.** |

**DEFENDANT, EDUCATIONAL CREDIT MANAGEMENT CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 AND LBR 7056-1**

Of Counsel and On the Brief:
    Kenneth L. Baum, Esq.

**PRELIMINARY STATEMENT**

This Memorandum of Law is submitted on behalf of Defendant, Educational Credit Management Corporation ("ECMC"), in opposition to Plaintiff, Kevin Jared Rosenberg's ("Plaintiff") motion for summary judgment (the "Motion") and in support of ECMC's cross-motion for an order granting it summary judgment on Plaintiff's Complaint pursuant to Fed. R. Civ. P. 56 and LBR 7056-1 (the "Cross-Motion"). Unless otherwise noted, the capitalized terms herein shall have the definitions ascribed to them in the accompanying Response to Plaintiff's Statement of Material Facts Not in Dispute and Counter-Statement of Material Facts as to Which There Exists No Genuine Issue Pursuant to Fed. R. Civ. P. 56(c) and LBR 7056-1 ("R. 56 Statement").

Plaintiff is seeking to have his federal student loan debt held by ECMC (the "ECMC Loan") declared dischargeable in this adversary proceeding, pursuant to Section 523(a)(8) of the Bankruptcy Code. The factual predicate for Plaintiff's claim, as set forth in his Motion, is that because he is currently struggling financially, is unable to improve that condition, and has attempted to pay the ECMC Loan, he is entitled to an undue hardship discharge of his student loan debt under the standard established by the Second Circuit in *Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner),* 831 F.2d 395 (2d Cir. 1987). In fact, the undisputed facts of this case show that Plaintiff has not satisfied *any* of the three (3) elements for establishing an undue hardship set forth in *Brunner*, let alone all three (3), which Plaintiff bears the burden of proving.

Plaintiff is a 45-year-old, healthy individual with no dependents. He is college-educated, with B.A. and J.D. degrees – the latter of which was financed through the ECMC Loan – and is licensed to practice law in the states of New York and New Jersey. Shortly after starting his first job as an associate attorney at a law firm, Plaintiff decided that practicing law was not for him,

because he disliked working in an office and did not find the work interesting. Thus, after leaving that job after only 2 ½ months, Plaintiff, with the exception of a brief period of working as a part-time contract attorney on a project basis – which Plaintiff likened to working as a paralegal – has not sought any employment in the legal profession and has no intention of ever doing so, despite the fact that opportunities abound for Plaintiff to make a very respectable living in the legal profession. Instead, Plaintiff, for the past 10 years, has held various positions in the outdoor adventure industry, including starting up and running his own tour guide business, to varying degrees of limited success, while making no use of his federal student loan-funded legal education.

Under these circumstances, all of which are of Plaintiff's own making, Plaintiff cannot satisfy the rigorous standard for the granting of an undue hardship discharge of the ECMC Loan. The failure of Plaintiff's case under Section 523(a)(8) is further demonstrated by the fact that he filed his Chapter 7 bankruptcy petition effectively for the sole purpose of discharging his student loan debt, which represents 99.87% of the debts listed in Schedule F to his Petition. Moreover, Plaintiff refuses to consider consolidating the ECMC Loan into a new, income-driven repayment option where monthly payments would be based on his annual income, even if Plaintiff's monthly payments were as low as $0.

For these and other reasons, the Court should deny Plaintiff's Motion. In addition, because there are no issues of material fact regarding Plaintiff's failure to establish his right to an undue hardship discharge, the Court should grant ECMC's Cross-Motion and award it summary judgment.

**STATEMENT OF FACTS**

ECMC respectfully refers the Court to the R. 56 Statement for a full statement of the relevant facts. For the Court's convenience, a summary of those facts follows below.

A. **Plaintiff's Education and Employment History**.

Plaintiff is 45 years old, unmarried, with no dependents. (R. 56 Statement, ¶¶ 1-2.) He has a Bachelor of Arts degree in History from the University of Arizona and a Juris Doctorate degree from Cardozo Law School at Yeshiva University. (Id., ¶¶ 3, 5.) The ECMC Loan was used to pay, among other things, Plaintiff's tuition and board at law school. (Id., ¶ 6.) Plaintiff is admitted to practice law in the states of New York and New Jersey. (Id., ¶ 7.) Plaintiff's bar admissions are currently in "retired" status, which means that he does not have to pay an annual fee or comply with continuing legal education requirements. Plaintiff has not researched what it would take to restore his bar admissions to active status. (Id., ¶¶ 12-13.)

After he graduated from law school and completed the bar examination, Plaintiff worked as an associate attorney at the law firm of Fisher Porter & Thomas in Englewood Cliffs, New Jersey, for approximately 2 ½ months, at a starting salary of between $55,000 and $60,000 per year. Plaintiff's tenure at Fisher Porter & Thomas ended because, among other things, Plaintiff disliked working in an office and did not find the work very interesting. (R. 56 Statement, ¶¶ 8-9.)

In addition to Fisher Porter & Thomas, Plaintiff has also worked as a contract attorney, doing document review-type projects, mostly for large law firms, earning between $25 and $35 per hour. In 2007 alone, Plaintiff earned between $70,000 and $80,000 working as a contract attorney. Since 2005-2006, however, with the exception of occasional contract work, Plaintiff has never pursued a career of any kind in the legal industry, including positions as a paralegal or law clerk. (R. 56 Statement, ¶¶ 10-11, 14.)

In January 2009, Plaintiff started a company called Gear to Go Outfitters, which was in the business of renting and selling outdoor equipment, as well as leading and guiding outdoor adventure trips. Plaintiff's earnings from Gear to Go Outfitters, in Plaintiff's words, "[r]anged from whatever profit was made to a maximum of $100,000 per year." Plaintiff operated Gear to Go Outfitters for almost 10 years. (R. 56 Statement, ¶¶ 17-19.)

B.    **Plaintiff's Employment Opportunities**.

According to Jesse R. Ogren of The Return to Work Center, whose Vocational Evaluation Report is attached as Exhibit A to Plaintiff's Motion, based on his education, past employment, experience in the United States Navy, and qualifications, there are employment opportunities available for Plaintiff: (i) as a legal assistant or paralegal, at salaries ranging from $42,000 to $120,000; (ii) as a retail store manager, at salaries ranging from $45,000 to $100,000 per year; and (iii) in customer service or entry level sales positions, at salaries ranging from $36,000 to $50,000 per year. (R. 56 Statement, ¶ 20.) Some of those positions are based in New York City.

Plaintiff is willing to commute up to sixty (60) miles, or a one (1) hour drive, for a job. Although the Metro-North Railroad stops in Beacon, New York, where Plaintiff lives, he would not consider a job that required him to commute by railroad into New York City, due to the length of the commute. (R. 56 Statement, ¶¶ 15-16.)

C.    **Plaintiff's Debts and Expenses**.

The main debt from which Plaintiff was seeking relief in filing a Chapter 7 bankruptcy petition was his student loan debt. Of the $370,826.27 in total debts listed in Schedule F to the Petition, $370,353.22, or 99.87%, were student loan debts. (R. 56 Statement, ¶¶ 21, 24.) Plaintiff did not list any creditors in Schedule D to his Chapter 7 Petition, and the only debts

5

listed in Schedule E to the Petition were an $11,934.30 debt to the Internal Revenue Service and a $400 debt to the New York State Department of Taxation and Finance. (Id., ¶¶ 22-23.)

Plaintiff is unwilling to consolidate the ECMC Loan into a new loan, where the amount of his monthly payments would be based on his income level, even if his payments were as low as $0 per month. (R. 56 Statement, ¶ 30.)

Plaintiff has lived in a house in Beacon, New York, which has 2 or 3 bedrooms, since May 2016. Plaintiff pays $2,150 per month in rent, but when he moved to Beacon from an apartment in Park Slope, New York, he was paying rent of $1,450 per month in rent for that apartment. Plaintiff is aware that there are less expensive housing options in his area, such as apartments renting for between $1,700 and $1,800 per month, but claims he cannot afford to move. (R. 56 Statement, ¶¶ 25-29.)

# LEGAL ARGUMENT

I. **BECAUSE THERE ARE NO GENUINE ISSUES OF MATERIAL FACT, AND ECMC IS ENTITLED TO JUDGMENT AS A MATTER OF LAW, ECMC IS ENTITLED TO SUMMARY JUDGMENT, AND PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT.**

A. **Summary Judgment Standards.**

Pursuant to Federal Rule of Civil Procedure 56, made applicable here by Federal Rule of Bankruptcy Procedure 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Sousa v. Marquez*, 702 F.3d 124, 127 (2d Cir. 2012) (same). In determining a motion for summary judgment, the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 271 (2d Cir. 2011).

B. **Standard for Declaring a Student Loan Debt Dischargeable.**

Section 523(a)(8) of the Bankruptcy Code provides that a student loan debt is not dischargeable unless "excepting such debt from discharge…will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. 523(a)(8). Although the Bankruptcy Code does not define the term "undue hardship," Congress has consistently limited the ability of debtors to discharge their student loan debt through bankruptcy, beginning in 1976. In 1976, Congress added a provision to the Higher Education Act of 1965, 20 U.S.C. 1001 *et seq.*, that barred the discharge of certain educational loans unless either (a) they had been in repayment for over five years (exclusive of any suspension in repayment), or (b) payment would impose an undue hardship on the debtor or his dependents. Education Amendments of 1976, Pub. L. No. 94-482, § 127(a), 90 Stat. 2141. Since then, Congress has intentionally and progressively made it more difficult for student loan obligations to be discharged in bankruptcy. *See Hemar Ins.*

7

*Corp. of Am. v. Cox (In re Cox)*, 338 F.3d 1238, 1243 (11th Cir. 2003)("Considering the evolution of § 523(a)(8), it is clear that Congress intended to make it difficult for debtors to obtain a discharge of their student loan indebtedness.").

In 1990, Congress extended the five-year requirement to seven years. Federal Debt Collection Procedures Act of 1990, Pub. L. No. 101-647, § 3621(2), 104 Stat. 4965; 11 U.S.C. 523(a)(8) (1994). Subsequently, in 1998, the seven-year provision was eliminated, allowing discharge of loans only in circumstances of a showing of undue hardship. Higher Education Amendments of 1998, Pub. L. No. 105-244, § 971, 112 Stat. 1837, for bankruptcies filed after October 7, 1998. Most recently, in 2005, Congress expanded the types of student loans that are subject to 523(a)(8) and are therefore not dischargeable absent an undue hardship. Bankruptcy Abuse and Consumer Protection Act of 2005, Pub. L. 109-8, § 220, 119 Stat. 59.

Because Congress selected the word 'undue,' the required hardship under § 523 must be more than the usual hardship that accompanies bankruptcy. Inability to pay one's debts by itself cannot be sufficient; otherwise all bankruptcy litigants would have an undue hardship. *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 399 (4th Cir. 2005); *see also In re Alderete*, 289 B.R. 410, 417-418 (Bankr. D. N.M. 2002)("Undue hardship means more than having a tight budget or a present inability to pay, because most debtors could make such assertions")(internal citations omitted).

Courts have examined the legislative purpose surrounding the nondischargeability of student loans in order to devise a method for analyzing complaints brought under this section. The *Brunner* district court expressed the high standard required before a student loan can be discharged

> Through § 523(a)(8), [the government] commits the student to repayment regardless of his subsequent economic circumstances. In return for giving aid to individuals who represent poor credit risks, it strips these individuals of the refuge of bankruptcy in all but extreme circumstances. This is a bargain each borrower strikes with

8

> the government. Like all bargains, it entails risks. It is for each student individually to decide whether the risks of future hardship outweigh the benefit of a deferred-payment education.

*Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 46 B.R. 752, 756 (S.D.N.Y. 1985), aff'd., 831 F.2d 395 (2d Cir. 1987). In 1987, the Second Circuit adopted the *Brunner* district court's standard for "undue hardship." *Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner),* 831 F.2d 395 (2d Cir. 1987) (per curiam). Under the *Brunner* test, a debtor claiming "undue hardship" must demonstrate:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Ibid*, at 396. Over the next twenty years, seven other circuits followed suit, adopting *Brunner* as the preferred rubric.[1] Along the way, a breadth of case law emerged and recognition of "the very heavy burden that must be met in proving undue hardship in the context of seeking a discharge of student loan debt." *In re Duval*, No. 10-10450 JMP, 2012 WL 1123041, at *5 (Bankr. S.D.N.Y. Apr. 3, 2012).

A debtor seeking to discharge her federal student loan(s) is required to satisfy all three elements of the *Brunner* test. *Traversa v. Educ. Credit Mgmt. Corp. (In re Traversa)*, 444 F. App'x 472, 474 (2d Cir. 2011); s*ee also In re Gleason*, No. 15-31254, 2017 WL 4508844, at *3

---

[1] *See Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 305 (3d Cir. 1995); *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 400 (4th Cir. 2005); *Gerhardt v. United States Dept. of Educ. (In re Gerhardt)*, 348 F.3d 89 (5th Cir. 2003); *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382 (6th Cir. 2005); *United Student Aid Funds v. Pena (In re Pena)*, 155 F.3d 1108, 1112 (9th Cir. 1998); *Educ. Credit Mgmt. Corp. v. Polleys (In re Polleys)*, 356 F.3d 1302, 1309 (10th Cir. 2004); *Hemar Ins. Co. of Am. v. Cox (In re Cox)*, 338 F.3d 1238, 1241 (11th Cir. 2003).

(Bankr. N.D.N.Y. Oct. 6, 2017). "If a debtor fails to establish any one of the three prongs, the court need not continue with its inquiry." *Gleason*, 2017 WL 4508844, at *3 (citing *Brunner*, 831 F.2d at 396).

Here, the undisputed facts show that Plaintiff cannot satisfy even one (1), let alone all three (3), of the *Brunner* elements. Accordingly, ECMC is entitled to summary judgment on Plaintiff's Complaint.

### C. The First Prong of the Brunner Test – Whether Plaintiff Can Maintain a Minimal Standard of Living for Himself and His Dependents if Forced to Repay the ECMC Loan.

To satisfy the first prong of the *Brunner* test, Plaintiff has the burden of proving that if he were required to make his monthly student loan payments, his standard of living would "'fall below a minimal level.'" *Thoms v. Educ. Credit Mgmt. Corp. (In re Thoms)*, 257 B.R. 144, 148 (Bankr. S.D.N.Y. 2001). This is a challenging standard for debtors to meet, since a debtor must "demonstrate more than tight finances, although a debtor is not required to live at or below the poverty line." *See In re Elmore*, 230 B.R. 22, 26 (Bankr. D. Conn. 1999). "A debtor must demonstrate financial circumstances that [go] beyond the 'garden-variety financial hardship' that most debtors experience." *In re Jean-Baptiste*, 584 B.R. 574, 587 (Bankr. E.D.N.Y. 2018).

In this regard, debtors must do "everything within their power to improve their financial situation before they can show that a current inability to … maintain a minimal standard of living … is likely to persist throughout much or all of the loan repayment period." *Educ. Credit Mgmt. Corp. v. Waterhouse*, 333 B.R. 103, 112 (W.D.N.C. 2005). Although, as noted above, the minimal standard of living requirement does not require a debtor to live in poverty, it does require a debtor to reduce his expenses to an amount that is minimally necessary to meet basic needs. *Perkins v. Pa. Higher Educ. Assistance Agency (In re Perkins)*, 318 B.R. 300, 305 (Bankr. M.D.N.C. 2004). A court must then evaluate "whether it would be 'unconscionable' to

require [the debtor] to take any available steps to earn more income or to reduce his expenses." *Pa. Higher Educ. v. Faish (In re Faish)*, 72 F.3d 298, 307 (3d Cir. 1995).

      Here, Plaintiff, using taxpayer-guaranteed federal student loans, obtained a law degree and was admitted to practice in the states of New York and New Jersey. Only 2 ½ months into his career as a lawyer, Plaintiff decided that it was not for him and effectively allowed himself to be terminated from his first job. Since that episode, which occurred more than 14 years ago, Plaintiff effectively abandoned his career as a lawyer. With the exception of periodic contract work on a part-time basis, Plaintiff has not held or even pursued any work in the legal profession, including a position as a paralegal or law clerk, which offers higher earning potential than his recent employment. While Plaintiff is free to pursue employment in the field of his choosing – including the adventure tour guide industry, where he has operated his own business and otherwise been employed for the past 10 years – he cannot simultaneously satisfy his obligation to maximize his income, and meet the rigorous requirements of the *Brunner* test, by disregarding the various potential employment opportunities in the legal profession.

      Similarly, Plaintiff cannot meet his burden of demonstrating that he is doing all he can to minimize his expenses. Notably, Plaintiff refuses to consolidate his federal student loan through an income-driven repayment option tied to his income, even if that option would afford him the opportunity to pay as little as $0 per month on his loan. Given the "sublime flexibility" afforded to Plaintiff through such an income-driven repayment option, his unwillingness to avail himself of that option precludes a finding that he satisfies the first prong of the *Brunner* test. *Grubin v. Sallie Mae Servicing Corp., LP, et al. (In re Grubin)*, 476 B.R. 699, 712 (Bankr. E.D.N.Y. 2012).

      In addition, Plaintiff claims he is unable to afford the cost of moving out of his current residence, where he lives alone in a house that has 2 or 3 bedrooms and pays $2,150 per month. Given Plaintiff's acknowledgment that smaller, less expensive housing options exist in his area,

his inability and/or unwillingness to take whatever steps are necessary to save himself a few hundred dollars per month in rent militate against a finding that he has minimized his expenses. *See Motor v. Great American Federal Savings and Loan Association*, 64 B.R. 317, 318 (Bankr. W.D. Pa. 1986) ("The Debtor could obtain more flexible finances if he either found someone to share the house and expenses as a boarder, or sold the house to recoup his $6,000 equity, and became a boarder himself.").

D. **The Second Prong of the Brunner Test – Whether Additional Circumstances Exist Indicating that Plaintiff's State of Affairs is Likely to Persist for a Significant Portion of the Repayment Period for his Student Loan.**

The second prong of the *Brunner* test requires a debtor to demonstrate that additional circumstances exist indicating that his state of affairs is likely to persist for a significant portion of the repayment period for the student loan. *Brunner*, 831 F.2d at 396; *see also Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 305 (3d Cir. 1995). "This is a demanding requirement." *Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 328 (3d Cir. 2001). It is not enough for a debtor to demonstrate that she has experienced current financial hardships, but rather, she must show "a total incapacity ... in the future to pay her debts for reasons not within [her] control." *Id.* (*quoting In re Brunner*, 46 B.R. 752, 758 (Bankr. S.D.N.Y. 1985)).

"In addressing this factor, a debtor must demonstrate that the additional circumstances point to a 'certainty of hopelessness' and not merely a present inability to pay student loan debt." *Jean-Baptiste v. Educ. Credit Mgmt. Corp., et al. (In re Jean-Baptiste)*, 2018 WL 1267944, *10 (Bankr. E.D.N.Y February 23, 2018). Indeed, the "additional circumstances requirement" recognizes that virtually every debtor in bankruptcy is strapped financially and that there must be something more than mere economic distress to justify a finding of undue hardship. *See, e.g., Educ. Credit Mgmt. Corp. v. Davis (In re Davis),* 373 B.R. 241, 250 (W.D.N.Y. 2007)("The type

12

of additional circumstances contemplated by *Brunner* are well beyond those hardships that normally accompany any bankruptcy."). Accordingly, courts have recognized that the kind of "additional circumstance" contemplated by undue hardship are where a debtor has experienced illness, developed a disability, or become responsible for a large number of dependents. *In re Thoms*, 257 B.R. 144, 149 (Bankr. S.D.N.Y. 2001).

Here, Plaintiff has no such "additional circumstances" that are outside his control. He has no dependents and, despite his claim that his earning potential as a mountain guide is limited by various physical ailments (Motion, ¶ 2.b.), there is no admissible evidence in the record that Plaintiff's future earning potential *in any capacity* is hampered by a disability or physical condition. *See* Norasteh v. Boston University (In re Norasteh), 311 B.R. 671, 678 (Bankr. S.D.N.Y. 2004) ("[A] borrower seeking an `undue hardship' discharge must provide corroborative evidence that he had an impairment that prevents him from earning enough to repay his student loans, and that the impairment is likely to persist well into the future.")

Simply put, any limitation on Plaintiff's earning capacity, whether actual or perceived, is of Plaintiff's own doing, and not attributable to any factor outside his control. Plaintiff has a law degree that he obtained through the use of federally-guaranteed student loans. He chose long ago not to leverage the income potential from that degree by abandoning a career as a lawyer after 2 ½ months, and even now, as he seeks the extraordinary relief of having his student loan debt discharged, he refuses to pursue employment in the legal profession that could markedly improve his financial situation. As part of that stance, Plaintiff also refuses to commute *via* the Metro North Railroad into New York City, where numerous potential employment opportunities lie, because it would take him beyond his self-imposed one (1) hour limitation on a daily commute. Under these circumstances, Plaintiff cannot satisfy the second element of the *Brunner* test.

13

E. **The Third Prong of the Brunner Test – Whether Plaintiff Made Good-faith Efforts to Repay the ECMC Loan.**

The third, and final, element of the *Brunner* test requires debtors to make good faith efforts to repay their student loans. This is measured by a debtor's ability to obtain employment, maximize income, and minimize expenses, as well as efforts to pay off student loan(s). *Pobiner v. Educ. Credit Mgmt. Corp. (In re Pobiner)*, 309 B.R. 405, 420-21 (Bankr. E.D.N.Y. 2004). The good faith test recognizes that with the receipt of a government-guaranteed education, the student assumes an obligation to make a good faith effort to repay those loans. *Id*. Here, there are numerous factors that militate *against* a finding that Plaintiff made a good faith effort to repay the ECMC Loan.

First, as courts have held, "[g]ood faith is … measured by a debtor's effort, or lack thereof, to negotiate an alternative repayment plan." *Pobiner v. Educ. Credit Mgmt. Corp. (In re Pobiner)*, 309 B.R. at 421. This principle is consistent with well-established precedent. *See Tirch v. Pa. Higher Educ. Assistance Agency (In re Tirch)*, 409 F.3d 677, 682 (6th Cir. 2005) (debtors who decline an income contingent repayment program have difficult time convincing court to discharge their student loan debt); *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 402 (4th Cir. 2005) ("Although not always dispositive, [debtor's] efforts to consolidate illustrate[] that the debtor takes her loan obligations seriously, and is doing her utmost to repay them despite her unfortunate circumstances."); *Kelly v. Sallie Mae Serv. (In re Kelly*, 351 B.R. 45, 54-55 (Bankr. E.D.N.Y. 2006) (concluding debtor failed to show good faith because she rejected consolidation options); *Educ. Credit Mgmt. Corp. v. Stanley (In re Stanley)*, 300 B.R. 813, 817-18 (N.D. Fla. 2003) (stating that court must consider whether any "available restructuring of this debt . . . would ease the payment obligation"); *Pobiner v. Educ.*

*Credit Mgmt. Corp. (In re Pobiner)*, 309 B.R. 405 (Bankr. E.D.N.Y. 2004) (denying discharge, in part, because debtor refused to avail himself of the Ford Program's ICRP option).

Here, by refusing to pursue consolidation of his federal student loan into an income-driven repayment option – even where that option could require him to pay as little as $0 per month – Plaintiff defeats his own case on the third prong of the *Brunner* test through his own obstinance.

In addition, Plaintiff's refusal to utilize his law degree, whether by resuscitating his career as a lawyer or leveraging his education and experience into a well-paid position as a paralegal or similar occupation, in the name of a more fulfilling, but lower paying, career, nullifies any claim that he has made a good faith effort to repay the ECMC Loan. *See Pobiner v. Educ. Credit Mgmt. Corp. (In re Pobiner)*, 309 B.R. at 420-21 (holding that the plaintiff failed to satisfy the good-faith element of the *Brunner* test, based on, *inter alia*, his admission that, "he has not made any effort to find work for an employer other than … his own contracting business, because of his desire to be his own boss."); *see also Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200 (10th Cir. 2005) (reversing lower courts and denying undue hardship discharge to debtors working in low-paying jobs that did not utilize their degrees); *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 386 (6th Cir. 2005) (finding, "[c]hoosing a low-paying job cannot merit undue hardship relief."); *United States Dep't of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 93 (5th Cir. 2003)(finding, nothing in the Bankruptcy Code allows a student loan borrower the choice to work in a lower paying field and discharge his student loans at the expense of the taxpayers); *In re Frushour*, 433 F.3d at 401 (concluding, "[h]aving a low-paying job, however, does not in itself provide undue hardship, especially where the debtor is satisfied with the job, has not actively sought higher-paying employment, and has earned a larger income in previous jobs.").

Finally, courts have held that where a debtor's "dominant" purpose in filing for bankruptcy is to obtain a discharge of his student loan obligations, a finding of good faith under the third prong of *Brunner* is not warranted. *See In re L.K.*, 351 B.R. 45 (Bankr. E.D.N.Y. 2009)(denying discharge to debtor whose student loan debt constituted 70% of debt scheduled in bankruptcy case); *Holzer v. Wachovia Servs., Inc. (In re Holzer)*, 33 B.R. 627, 632 (Bankr. S.D.N.Y. 1983)(good faith prong not satisfied where, *inter alia*, student loans were only debts listed in debtor's schedules); *D'Ettore v. DeVry Inst. of Tech. (In re D'Ettore)*, 106 B.R. 715, 718 (Bankr. M.D. Fla. 1989)(dismissing debtor's complaint where student loans constituted 82% of debtor's total debts).

As one court held, to determine whether Plaintiff satisfies the "good faith" prong of the *Brunner* test, the Court must consider, among other things, the ratio of Plaintiff's student loan debt to his total debt. *Pobiner v. Educ. Credit Mgmt. Corp. (In re Pobiner)*, 309 B.R. 405, 421 (Bankr. E.D.N.Y. 2004) (citing *Holzer*, 33 B.R. at 632 and *D'Ettore*, 106 B.R. 715)). As the Court noted in *Pobiner*,

> In *D'Ettore*, the Court determined that the debtor's student loans were nondischargeable because they constituted 82% of the total debt sought to be discharged and, thus, it seemed clear that **one of the dominant purposes of the bankruptcy filing was to discharge the student loans**.

*Pobiner*, 309 B.R. at 421.

Here, Plaintiff's student loans represent 99.87% of the debts listed in Schedule F to his Petition. Given that there are no debts listed in Schedule D, and only $12,334.30 of tax debts listed in Schedule E – which may or may not be nondischargeable as a matter of law – it is clear, as Plaintiff acknowledged at his deposition, that the main purpose of filing his Petition was to attempt to discharge his student loans. Under the holding in *Pobiner* and the other decisions referenced above, Plaintiff fails to satisfy the third prong of the *Brunner* standard. Accordingly,

16

for these and the other reasons cited above, the Court should deny Plaintiff's Motion and grant ECMC's Cross-Motion for summary judgment.

## CONCLUSION

For the foregoing reasons, ECMC respectfully requests that the Court enter an order (i) denying Plaintiff's Motion, (ii) granting ECMC's Cross-Motion, and (iii) for such other and further relief as the Court deems just and proper.

Dated: Hackensack, New Jersey
October 8, 2019

Respectfully submitted,

LAW OFFICES OF KENNETH L. BAUM LLC
Attorneys for Defendant, Educational Credit Management Corporation

By: */s/ Kenneth L. Baum*
Kenneth L. Baum