# United States Bankruptcy Court
## Southern District of New York

FILED
US BANKRUPTCY COURT
2019 OCT 22 P 1:56
POUGHKEEPSIE, NY

| | |
|---|---|
| In re | )<br>)<br>) |
| Kevin Jared Rosenberg, | ) Bankruptcy<br>) Case No. 18-35379-cgm |
| Debtor. | )<br>) |
| _____ | )<br>) |
| Kevin Jared Rosenberg, | )<br>) |
| Plaintiff, | ) Adversary<br>) Proceeding No. |
| v. | )<br>) **ORAL ARGUMENT IS REQUESTED** |
| Educational Credit Management Corporation (ECMC), | )<br>) |
| Defendant. | )<br>) |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Kevin J. Rosenberg ("Rosenberg") moves this court to deny Defendant's motion for summary judgment as it is based on factual misstatements and attempts to use "gaslighting" techniques to create a cloud of credibility. In support of this motion Rosenberg states as follows:

1. In section A of Defendant's State of Facts, Defendant ECMC, incorrectly states that Plaintiff is 45 when Plaintiff is 46. Having filed for chapter 7 at age 44, the fact that nearly 2 years have passed and there has been no change in Plaintiff's financial situation further reinforce a finding that Plaintiff Kevin Rosenberg would not be able to maintain a minimal standard of living if forced to repay the nearly $200,000 in student loans that Defendant is seeking judgment on.

2. Continuing with section A, Defendant seems to base their argument on the fact that Rosenberg voluntarily quit his job at the law firm of Fisher Porter & Thomas when in fact Plaintiff was fired and Defendant, though aware of this fact, attempts to cloud reality in an effort to create an legal argument where none exists. Though Defendant later argues that Plaintiff was choosing to default on his student loans by working in the outdoor retail industry Defendant undermines its own argument in section A, paragraph 4 when it boldly declares that Plaintiff made as much as $100,000 a year in his chosen career. This argument is a red herring since neither the Brunner, nor the Totality of the Circumstances tests require a debtor to work within the field of his degree in order to obtain discharge of their student loan debt. Furthermore, Defendant's argument fails because as they in fact proclaim, Plaintiff's chosen profession was potentially lucrative and did in fact yield a salary of $100,000

1

3. Section B of Defendant's statement is an attempt to twist the report of its expert witness to mean something it doesn't. Defendant's expert found Plaintiff suitable for various jobs, none of which would allow Plaintiff to repay his student loan debt without experiencing undue hardship and essentially becoming an indentured servant. For example, though Defendant's expert was able to find paralegal jobs paying high salaries as part of his search of the internet from his office in the Midwest, Defendant omits the fact that these high paying jobs require upwards of 10 years of experience in very specific roles. The entry and even mid-level jobs found by the expert's search do not pay anywhere near what would be required to repay what is essentially the cost of a house while still needing to pay for an actual house to live in.

4. Section C of Defendant's motion highlights Defendant's refusal to comply with discovery requests, including an accounting of Plaintiff's payments and his attempts to work out payment arrangements wit Defendant. Defendant cannot refuse to turn over documents kept in the ordinary course of business and then claim that the absence of these documents bolsters its position. I'd ask this court to sanction the Defendant for its refusal to comply with this court's order to turn over these documents.

5. Furthermore, section C falsely claims that Plaintiff has refused to enter into an income-based repayment plan. Plaintiff was in fact actively enrolled in this program with Defendant shortly before filing for Chapter 7 and it was Defendant's actions to frustrate such a plan that led us here today. Defendant ECMC stands in for Navient and Sallie Mae, corporations that are currently under investigation for wrongdoing by several State's Attorneys General. Much of the misconduct being investigated involves repayment plans such as income-based repayment. Defendant enters this courtroom with unclean hands. New York's State Attorney General has even filed an amicus brief in one case against Navient (https://ag.ny.gov/press-release/2019/attorney-general-james-leads-bipartisan-coalition-fighting-student-borrowers).

6. While enrolled in the income-based repayment program Defendant demanded almost $1,200 per month and would not accept a lower amount. As evidenced by Plaintiff's Chapter 7 filing, it was a factual impossibility for Plaintiff to make these payments and still pay for food and shelter, thus establishing an undue burden and an undue hardship. Defendant also hides that fact that payment arrangements such as deferment and forbearance do real harm to debtors since they tack on interest as principal and quickly jack up what is owed. Plaintiff has recognized that entering into an income-based repayment plan would simply make Kevin Rosenberg and indentured servant forever indebted to ECMC and that he would die still owing more to his master.

7. Defendant's gaslighting continues in section C, paragraph 3. Defendant argues that all would be saved if only Plaintiff would move to a cheaper house in order to save $4,200 per year. Defendant ignores that fact that hiring movers would cost around $3,000 and that, after recently filing for Chapter 7 Bankruptcy, it would be difficult to be approved by a new landlord and that if approved Plaintiff would likely have to provide 3 month's deposit, the equivalent of $5,400. Moving would in effect cost $8,400 while saving $4,200, or a net loss to Plaintiff of $4,200. This would do further harm to Plaintiff's financial situation.

8. In section C of Defendant's legal argument (p.11), Defendant contradicts its earlier allegation that Plaintiff quit his job as a lawyer and now states that Plaintiff was terminated. Defendant

makes a great deal of that fact that Plaintiff has not worked in the legal profession but simultaneously ignores the fact that Plaintiff aggressively pursued a career in outdoor retail while previously stating that this career brought in a salary of $100,000 at its peak. Though Plaintiff chose to pursue a career better suited for his background, skills, and talents, he did not give up on paying back his loans. In fact, Plaintiff's career seemed like a promising way to pay back his loans and achieve financial success, a fact backed up by the increasing amount of payments Plaintiff made on his student loans as his business grew. The fact that Plaintiff's industry collapsed as the habits of shopper shifted from brick & mortar to large scale online retail does not negate the fact that the future appeared bright when Plaintiff set out on his career path. The stormy weather that lay over the horizon would eventually sink his ship but as he left harbor the skies were clear and the winds favorable.

9. Defendant's argument in Section D strains credibility and borders on an ethical violation. Though Defendant requested and received Plaintiff's medical records related to his back surgery for a herniation of the L5-S1 disc, and also the medical records related to the more recent (1/19) herniation of the L4-L5 disc, Defendant now claims to have no evidence of Plaintiff's medical issues that hamper and threaten to end his career. Plaintiff was unable to work as a mountain guide for nearly 2 years due to the first herniation and the second herniation threatens to end his career.

10. Further along in Section D, paragraph 5 (p. 13), Defendant, without evidence or support, claims that limitations on Plaintiff's earning capacity are "Plaintiff's own doing, and not attributable to any factor outside his control." This arrogant statement not only ignores the medical evidence in Defendant's possession, but also asks this court to effectively bury its head in the sand and ignore the reality that the brick & mortar retail industry has collapsed and that former bastions of retail such as Sears have declared bankruptcy. Defendant asks you to ignore the realities of 2019 and decide this case as if we were living in 1989. The fact is that brick & mortar retail has collapsed, and its collapse was in fact outside of Plaintiff's control.

11. Defendant continues its fairytale argument by shrinking the distance between Plaintiff's home in Beacon, NY, and jobs in New York City. Defendant argues that because there is rail service connecting the two that it is more than reasonable for Plaintiff to seek work there. Defendant ignores the realities of such a commute. Lets' say Plaintiff leaves his home at 6 am and drives 15 minutes to the Beacon station in order to be able to park and reach the platform in time to catch the 6:31 am train to Grand Central, arriving at 7:48 am. Plaintiff then joins the crowds slowly walking down the platform and pushes through to reach the subway. Let's say Plaintiff is once again working in Brooklyn. Plaintiff reaches the platform around 8 am and waits for the train. Assuming he boards a train around 8:05 am he might reach his stop in Brooklyn between 8:30 and 8:45 am. Plaintiff then needs to walk to his office so let's say he arrives at 9 am. After his 3-hour commute Plaintiff puts in an 8-hour day, leaving his office at 5 pm and reverses the process, arriving home at 8 pm. Plaintiff commutes for 6 hours, works for 8 hours (probably more) leaving little time for anything other than sleep. Plaintiff's statement that he is looking for work within a 2-hour daily commute is entirely reasonable and forcing Plaintiff to commute 6 hours a day for 5 or more days a week is an undue hardship.

12. On page 15 of Defendant's argument he once again ignores reality and despite 15 years having passed since Plaintiff graduated from law school, Defendant supposes without expert support, that Plaintiff can simply decide to practice law and jump right into a "well-paid position". Any lawyer in your courtroom would find this argument to be laughable, especially when considering the fact that Plaintiff only practiced law for 2.5 months. As this court and all the lawyers arguing before it can attest to, Law School does not teach you how to be a lawyer.

13. Further down on page 15 Defendant bases its argument on the false claim that Plaintiff "chose" a low paying profession. Plaintiff asks the court to take judicial notice of the fact that there are careers aside from that of a lawyer that reward those that succeed with handsome salaries and compensation. In starting his outdoor retail company Plaintiff did not choose a "low paying profession" but rather saw a lucrative opportunity that he though would allow him to achieve financial success and allow him to repay his loans. In fact, as Defendant acknowledges, Plaintiff did achieve this success and was earning a salary of $100,000 before the retail industry collapsed and with it, Plaintiff's career.

14. On page 16 of Defendant's argument he presents the tortured logic that because you are unable to repay your student loans you must repay your student loans. Defendant essentially argues that because "WE" are the ones drowning you in debt you can never repay the court cannot throw you a lifeline and save you. Defendant would be fine if Plaintiff was unable to pay for a house or owed the IRS years of back taxes but because the debt is owed to him, relief is not an option.

15. Defendant, through its lengthy brief, attempts to distract this court with gaslighting and shiny objects because it has no real argument. As Senator Moynihan famously said, "You're entitled to your own opinion and not your own facts!" Here the facts are undisputed.

    a. Based upon current income and expenses, Plaintiff cannot maintain a minimal standard of living for if forced to repay your loans.

        i. Defendant does not challenge Plaintiff's current income or lack of assets

    b. Additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans.

        i. The brick & mortar retail industry has collapsed

        ii. Plaintiff underwent back surgery for a herniated disc in 2017

        iii. Plaintiff suffered a second disc herniation in 2019

        iv. Plaintiff has been diagnosed with arthritis in his right knee

        v. Defendant's expert concluded that the jobs Plaintiff is qualified for would not pay enough to allow him to repay his student loan debt and maintain a minimal standard of living.

        vi. It has been 15 years since Plaintiff graduate from law school

    c. Debtor made a good faith effort to repay the loans.

4

     i. Plaintiff made payments on his loan or requested income-based repayment, economic hardship forbearance, or economic deferment throughout the repayment period beginning in 2005, as soon as his Military Forbearance had expired.

    ii. Plaintiff aggressively worked to maximize his income by starting his own business and working 7 days a week to grow the business and eventually earned a salary of $100,000 before the industry collapsed

   iii. Plaintiff minimized his expenses by living with family and in the basement of his shop.

16. The facts show that Plaintiff Kevin J. Rosenberg has satisfied all elements of both the Brunner and the Totality of the Circumstances tests. Defendant does not argue the facts and attempts to distract attention away from the facts and as such Defendant's motion is without merit.

Wherefore, Rosenberg respectfully requests the Court enter an order denying Defendant's motion, granting Plaintiffs motion for summary judgment, discharge of his student loan debt, and granting such other relief as the Court may deem fair and just.

                                                Very Respectfully,

                                                Kevin J. Rosenberg
                                                Plaintiff, Pro Se

October 22nd, 2019

Kevin J. Rosenberg
Plaintiff, Pro Se
15 Grove Street
Beacon, NY 12508
(917) 301-8238
MtGuideKevin@gmail.com

5