**LAW OFFICES OF KENNETH L. BAUM LLC**
201 W. Passaic Street, Suite 104
Rochelle Park, New Jersey 07662
(201) 853-3030
(201) 584-0297 Facsimile
Attorneys for Educational Credit Management Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| KEVIN JARED ROSENBERG, | CASE NO. 18-35379-cgm |
| Debtor. | Chapter 7 |
| KEVIN JARED ROSENBERG, | |
| Plaintiff, | |
| v. | |
| NY STATE HIGHER EDUCATION SERVICES CORPORATION, YESHIVA UNIVERSITY, ACCESSLEX INSTITUTE d/b/a ACCESS GROUP, and EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | ADV. PRO. NO. 18-09023-cgm |
| Defendants. | |

**OBJECTION OF EDUCATIONAL CREDIT MANAGEMENT CORPORATION TO
PLAINTIFF'S MOTION TO STRIKE EXPERT TESTIMONY AND REPORT**
(Related Docket No.: 102)

Educational Credit Management Corporation ("ECMC"), through its attorneys, Law

Offices of Kenneth L. Baum LLC, opposing the Plaintiff's motion to strike the expert testimony

and Vocational Evaluation Report of Jesse R. Ogren [Dkt. No. 102] (the "Motion"), respectfully

represents:

1.      The Motion seeks to strike the expert testimony and Vocational Evaluation

Reports (together, the "Report") of ECMC's proposed expert witness, Jesse R. Ogren ("Ogren"),

pursuant to Fed. R. Evid. 702.

2.      Fed. R. Evid. 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

      (a)      the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

      (b)      the testimony is based on sufficient facts or data;

      (c)      the testimony is the product of reliable principles and methods; and

      (d)      the expert has reliably applied the principles and methods to the facts of the case.

3.      Rule 702 should be read in conjunction with Fed. R. Evid. 104(a), which provides, in relevant part, that "[t]he court must decide any preliminary question about whether a witness is qualified…or evidence is admissible." This rule, "on its face allows the trial judge to consider any evidence whatsoever, bound only by the rules of privilege." *Bourjaily v. U.S.*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144, 178 (1987). The trial court should determine this question under a preponderance of the evidence standard. *Id.*, 97 L.Ed.2d at 172.

4.      As the Second Circuit has recognized, "[i]t is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions, representing a departure from the previously widely followed, and more restrictive, standard of *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923)." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005). In this regard, "[e]xclusion of expert testimony is 'the exception rather than the rule.'" *Packard v. City of New York*, 2020 WL 1479016, *2 (S.D.N.Y. March 25, 2020) (quoting *Media Glow Digital, LLC v. Panasonic Corp. of N. Am.*, No. 16 Civ. 7907, 2019 WL 1055527, at *1 (S.D.N.Y. Mar. 6, 2019) (citation omitted)).

5.       According to the Second Circuit, the three criteria for determining the admissibility of proposed expert testimony are: (1) whether the witness qualifies as an expert on a particular topic; (2) whether the opinion is based on reliable data and methodology; and (3) whether the expert testimony will assist the trier of fact.  *Nimely v. City of New York*, 414 F.3d 381, 396-7 (2d Cir. 2005).

6.       To determine the first criteria, i.e., whether the witness qualifies as an expert, "the court must first ascertain whether the proffered expert has the educational background or training in a relevant field." *Lickteig v. Cerberus Capital Management, L.P.*, ___ F.Supp.3d ___, 2022 WL 671630, *16 (S.D.N.Y. March 7, 2022) (citation omitted).  Courts then "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *U.S. v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).

7.       Here, Ogren's broad educational and professional experience in the area of vocational counseling, evaluation, and rehabilitation, renders him well-qualified to provide expert testimony regarding Plaintiff's job opportunities and the range of salaries associated therewith.  Ogren holds an M.S. degree in Vocational Rehabilitation, with a dual concentration in Counseling and Evaluation, from the University of Wisconsin – Stout.  He is a Certified Rehabilitation Counselor by the Commission on Rehabilitation Counselor Certification, which is required in his profession to work with state and federal agencies, and a Licensed Professional Counselor (LPC), with a license issued by the State of Wisconsin.  He is also registered as a Forensic Vocational Expert by the American Rehabilitation Economics Association.  *See* Declaration of Jesse R. Ogren attached hereto as **Exhibit A** ("Ogren Dec."), ¶ 2.)

8.       In addition, Ogren has, since 2006, been qualified as an expert and provided expert opinions for a wide variety of legal matters, including workers compensation, personal injury, Federal Employee Labor Act, divorce proceedings, medical malpractice, long term

3

disability, VA benefits, Social Security Administration Disability Hearings, and, of particular

relevance to this case, an adversary proceeding in the United States Bankruptcy Court for the

Southern District of New York, titled *Lozada v. Educational Credit Mgmt. Corp.*, 594 B.R. 212

(Bankr. S.D.N.Y. 2018), *aff'd*, 604 B.R. 427 (S.D.N.Y. 2019), involving a litigant who, similar

to Plaintiff, sought an undue hardship discharge of his federal student loans pursuant to Section

523(a)(8) of the Bankruptcy Code.  (Ogren Dec., ¶ 6.)  Plaintiff's attempt to discredit Ogren as

an expert witness based on his role in *Gutherless v. Union Pacific Railroad Co.*, 2021 WL

5958355 (D. Neb. December 16, 2021), should be rejected, given that Ogren *was* permitted to

testify in that case, although the court limited the maximum amount of potential lost wages that

he was allowed to testify to.  (Id., ¶ 7.)  Accordingly, because Ogren qualifies as a vocational

expert, he satisfies the first element of the Second Circuit test.

9.      To determine whether the second criteria of the Second Circuit's standard has

been satisfied, i.e., whether the opinion is based on reliable data or methodology, courts typically

review the four (4) *Dauber* factors: "(1) whether the methodology or theory has been or can be

tested; (2) whether the methodology or theory has been subjected to peer review and publication;

(3) the methodology's error rate; and (4) whether the methodology or technique has gained

general acceptance in the relevant scientific community."  *Clerveaux v. East Ramapo Central*

*School District*, 984 F.3d 213, 233 (2d Cir. 2021) (citing *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 593-4, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).  As the

Supreme Court has noted post-*Dauber*, however, this list of factors "was meant to be helpful, not

definitive."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1175, 143

L.Ed.2d 238 (1999).  "Indeed, those factors do not all necessarily apply even in every instance in

which the reliability of scientific testimony is challenged."  *Id.*  *See also Tyus v. Urban Search*

*Management*, 102 F.3d 256, 263 (7th Cir. 1996) ("It is true, of course, that the measure of

4

intellectual rigor will vary by the field of expertise and the way of demonstrating expertise will also vary.").

10.    Here, as discussed in his Declaration, Ogren uses the RAPEL methodology for determining earning capacity.  This is a widely-used and accepted methodology authored by Dr. Roger O. Weed, Ph. D., LPC, CLCP, CRC, and closely follows the vocational rehabilitation method professionals use to return clients to work.  (Ogren Dec., ¶¶ 8-9.)  In order to gather sufficient facts and data to render his report – which, as Ogren notes, is aimed not at assessing any quantum of potential damages due to loss of employment by Plaintiff, but rather, at determining the potential areas of employment for which Plaintiff is reasonably qualified if he sought to increase his earning potential – Ogren conducted two separate telephone interviews with Plaintiff, reviewed the pleadings and deposition transcripts in this case, and applied Plaintiff's circumstances to the five elements of the RAPEL methodology: Rehabilitation Plan, Access to the Labor Market, Placeability, Earning Capacity, and Labor Force Participation.  (*Id.*, ¶ 9.)  Ogren then determined Plaintiff's qualifications for employment including his past work history, analyzed that past work using the Dictionary of Occupational Titles to research job postings within Plaintiff's labor market to determine potential salary ranges, and included those findings in his report.  (Id., ¶ 10.)  Because the relevant *Dauber* factors are satisfied in this case, which does not involve any theories of science, engineering, or other technical applications, Ogren satisfies the second element of the Second Circuit test.

11.    Finally, to determine whether the third criteria of the Second Circuit's standard has been satisfied, i.e., whether the expert testimony will assist the trier of fact, a court must determine whether the expert's knowledge "will be not only relevant, but reliable." *U.S. v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015).  To be sure, "expert testimony that 'usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in

applying that law to the facts before it…by definition does not 'aid the jury in making a

decision….'" *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (citations omitted).

Here, given that Plaintiff refuses to pursue any potential employment opportunities that would

increase his income, Ogren's testimony, which will discuss the scope of those opportunities and

the corresponding wage scales, will be invaluable to the Court in determining whether Plaintiff

satisfies the rigorous standard for discharging student loans in bankruptcy enumerated in

*Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner),* 831 F.2d 395 (2d Cir. 1987).

Accordingly, because Ogren satisfies this criteria, as well as the first two criteria of the Second

Circuit test, the Motion should be denied.


       **WHEREFORE**, ECMC respectfully requests entry of an Order denying the Motion and

such other and further relief as this Court deems just and proper.


Dated:    Rochelle Park, New Jersey
        August 9, 2022

                                LAW OFFICES OF KENNETH L. BAUM LLC
                                Attorneys for Educational Credit Management Corporation


                                By:     */s/ Kenneth L. Baum*
                                    Kenneth L. Baum
                                    201 W. Passaic Street, Suite 104
                                    Rochelle Park, New Jersey 07662
                                    (201) 853-3030
                                    (201) 584-0297 Facsimile
                                    kbaum@kenbaumdebtsolutions.com

# EXHIBIT A

**LAW OFFICES OF KENNETH L. BAUM LLC**
201 W. Passaic Street, Suite 104
Rochelle Park, New Jersey 07662
(201) 853-3030
(201) 584-0297 Facsimile
Attorneys for Defendant,
Educational Credit Management Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>KEVIN JARED ROSENBERG,<br><br>       Debtor. | CASE NO. 18-35379-cgm<br><br>Chapter 7 |
| KEVIN JARED ROSENBERG,<br><br>       Plaintiff,<br><br>    v.<br><br>NY STATE HIGHER EDUCATION SERVICES CORPORATION, YESHIVA UNIVERSITY, ACCESSLEX INSTITUTE d/b/a ACCESS GROUP, and EDUCATIONAL CREDIT MANAGEMENT CORPORATION,<br><br>       Defendants. | ADV. PRO. NO. 18-09023-cgm |

**DECLARATION OF JESSE R. OGREN IN OPPOSITION
TO PLAINTIFF'S MOTION TO STRIKE**

JESSE R. OGREN, of full age, pursuant to 28 U.S.C. § 1746, hereby declares under

penalty of perjury as follows:

## I. **INTRODUCTION**

1.      I have been retained by Defendant, Educational Credit Management Corporation ("ECMC"), to provide expert testimony on the issue of the potential employment opportunities available to Plaintiff, Kevin Rosenberg ("Plaintiff").  I have personal knowledge of the facts set forth herein and am authorized to make this Declaration in opposition to Plaintiff's motion to strike my testimony and Vocational Evaluation Report (the "Report").

## II. **EDUCATIONAL AND PROFESSIONAL BACKGROUND**

2.      Attached hereto as **Exhibit 1** is a true copy of my curriculum vitae ("C.V.").  As the C.V. reflects, I hold an M.S. degree in Vocational Rehabilitation, with a dual concentration in Counseling and Evaluation, from the University of Wisconsin – Stout.  I am a Certified Rehabilitation Counselor by the Commission on Rehabilitation Counselor Certification, which is required in my profession to work with state and federal agencies, and a Licensed Professional Counselor (LPC), with a license issued by the State of Wisconsin.  In addition, I am registered as a Forensic Vocational Expert by the American Rehabilitation Economics Association.

3.      I have been employed as a Vocational Counselor and Evaluator since 2006, first with Rehabilitation Specialists Group, Inc., in Phoenix, Arizona, from 2006-2008; and, since then, with the Wisconsin Return-to-Work Center in Minneapolis, Minnesota, where I am now the owner.

4.      I work with State and Federal agencies to provide vocational rehabilitation assistance and loss of earning capacity reports for referral sources.  My degree and training allow me to provide expert testimony in the field of earning capacity and wage loss due to my experience working with individuals in a return-to-work environment.  I have become familiar with the abilities of people to return to work based on their qualifications, or through retraining.

2

That familiarity provides a foundation for my ability to opine on someone's earning capacity following a vocational evaluation.

5.    I have served as a board member of the IARP organization, which is a community for private vocational rehabilitation providers.  I currently am a member of A-R-E-A, which is a professional organization for vocational experts and economic experts.  I have had my work peer-reviewed prior to obtaining the qualification of Registered Vocational Expert by the organization.  I am also a Licensed Professional Counselor, which allows me to work with people in a counseling relationship as required by State and Federal agencies.

### III.  EXPERT WITNESS EXPERIENCE

6.    Since 2006, I have provided expert opinions for legal matters including: workers compensation, personal injury, Federal Employee Labor Act, divorce proceedings, medical malpractice, long term disability, VA benefits, and Social Security Administration Disability Hearings.  The testimony list on the last two pages of my C.V. includes the last five years of testimony in either court proceedings or in depositions.  I have been qualified as a vocational expert and testified in various State and Federal courts, including the United States Bankruptcy Court for the Southern District of New York, in a matter titled *Lozada v. Educational Credit Mgmt. Corp.*, 594 B.R. 212 (Bankr. S.D.N.Y. 2018), *aff'd*, 604 B.R. 427 (S.D.N.Y. 2019).  In that case, the plaintiff, similar to Plaintiff here, sought an undue hardship of his federal student loans pursuant to Section 523(a)(8) of the Bankruptcy Code.

7.    Of all the cases in which I have provided an expert opinion, which exceed the testimony listings on my C.V, there has only been one case where a *Daubert* challenge was made: *Gutherless v. Union Pacific Railroad Co.*, 2021 WL 5958355 (D. Neb. December 16, 2021) ("*Gutherless*"), which is the case referenced in Plaintiff's motion.  In that case, I was retained by the plaintiff, who became disabled while working as a train conductor.  Defense

3

counsel challenged my opinion as to the maximum potential lost income, relying on aggregate

earning data from the Bureau of Labor Statistics. In response, I provided the court with earnings

data from the State of Nebraska that showed earnings for railroaders were on par with my

opinions. Although the court limited the maximum amount of potential lost wages that I was

allowed to testify to, I was, in fact, permitted to give expert testimony on the issue, and the case

eventually settled.

### IV. METHODLOGY AND APPLICATION TO PLAINTIFF'S CASE

8.      The field of forensic Vocational Rehabilitation has several methodologies that

provide a standard of practice for determining earning capacity. I use what is known as the

RAPEL methodology. This is a widely-used and accepted methodology authored by Dr. Roger

O. Weed, Ph. D., LPC, CLCP, CRC. The RAPEL methodology for determining appropriate

vocational recommendations and development of professional opinions is described as:

- "R" stands for the Rehabilitation Plan, which may include vocational assistance, tuition, rehabilitation technology equipment, and supplies.

- "A" is Access to the Labor Market, based on the concept of "employability," which determines worker traits, cognitive capabilities, and identification of jobs.

- "P" in RAPEL refers to Placeability, the real-world test of determining if the client can be successfully placed in a job.

- "E" refers to Earning Capacity, based on the ability to earn an income; that is, the earning capacity which the individual can reasonably attain and hold.

- "L" refers to the Labor Force Participation, or worklife expectancy. It may take longer to find a job or to enter the labor market than if the disability had not occurred.

9.      The RAPEL methodology closely follows the vocational rehabilitation method professionals use to return clients to work.[1]  In order to gather sufficient facts and data to render a report in this case – which, it should be noted, is aimed not at assessing any quantum of potential damages due to loss of employment by Plaintiff, but rather, at determining the potential areas of employment for which Plaintiff is reasonably qualified if he sought to increase his earning potential – I conducted two separate telephone interviews with Plaintiff and reviewed the pleadings and deposition transcripts in this case.  Based on the facts I gathered, I was able to apply the RAPEL methodology to Plaintiff as follows:

Rehabilitation Plan: None needed for Plaintiff.  He has some medical issues that he discussed, but does not have any limitations and continues to push through any pain he experiences.  Additionally, he has training as a lawyer, and experience working as a paralegal, retail store manager, tour operator, and in customer service. Accordingly, no additional training is necessary for him to find employment.

Access to the Labor Market: In my initial report, I included job opportunities that were available to Plaintiff within his geographical locale, which, at the time, was Beacon, New York.  Currently, Plaintiff is living in Norway.  He is working remotely, and the labor market was determined to be any remote occupation, or, in the event he moves back to New York, within that market.

Placeability: Plaintiff has been successfully employed as a paralegal, retail store manager, and tour operator, and he has provided customer service.  He has demonstrated the ability to perform these jobs and his ability to work has allowed him to be self-employed.

Earning Capacity: To determine a range of earning capacities based on the jobs described above, a labor market survey was conducted.  Attached to each of the last two reports were numerous job postings that listed wage ranges.

Labor Force Participation: Plaintiff has no disability that would prevent him from engaging in any of the jobs mentioned in my reports.  He has worked continuously since completing his law degree and there would be no expectation of a delay in his ability to find a job.

---

[1] It should be noted that the RAPEL methodology was not a part of the defendant's *Daubert* challenge in the *Gutherless* case.

10.     Using the RAPEL methodology, I determined Plaintiff's qualifications for
employment including his past work history.  I analyzed that past work using the Dictionary of
Occupational Titles to research job postings within Plaintiff's labor market to determine potential
salary ranges.  I then included those findings in a report in April 2019 and an addendum in June
2022

11.     In my reports, I clearly provide unique examples of job postings that Plaintiff
could reasonably pursue and obtain due to his qualifications.  I am not relying on my experience
to opine that, for example, Plaintiff could earn $80,000 or more per year as a paralegal; he has
already made that.  Similarly, there are a large amount of job postings demonstrating that he
could continue earning that amount or more.

12.     Lastly, while my reports are not sworn to – in my experience, expert reports are
issued for disclosure purposes, and I have routinely been deposed and/or testified under oath to
provide my expert testimony – nothing in my reports would change if they were sworn to.  In a
trial, I stand behind every opinion in my report and the findings obtained through the
methodology used above.

I hereby declare that the foregoing statements made by me are true. I am aware that if any
of the foregoing statements made by me are willfully false, I am subject to punishment.

 /s/ Jesse R. Ogren
JESSE R. OGREN

DATED:  August 9, 2022

6

# EXHIBIT 1

# Jesse Roy Ogren, M.S., C.R.C., L.P.C.

8400 Normandale Lake Blvd. Suite 920, Bloomington, MN 55437
715.456.6516 Cell
612.353.5154 Office 612.605.3792 Fax
Jesse.ogren@wrtwc.com

## Professional Experience

**Vocational Counselor and Evaluator - Owner**                           **2008-present**
Wisconsin Return-To-Work Center                                Minneapolis, Minnesota

Employs psychometric testing and work-like assessments to determine aptitudes, achievement scores in vocational evaluations. Writes vocational assessments reports to offer vocational possibilities for placement or training; and records vocational counseling progress. Conducts contracts with state employment services, to provide evaluation and placement. Continued work with Veterans' Administration in evaluation, counseling, and independent living. Directs clients through the steps of vocational rehabilitation for returning to employment, as well as connecting them with resources for assistance available to them. Coordinates services with employer based vocational rehabilitation services, accommodations, work trials, and job placement. Utilizes job placement resources to find job openings, physical demands, and earnings. Provides vocational evaluation and earning capacity reports for litigation in the areas of divorce, personal injury, worker's compensation, railroad (F.E.L.A.). Provides vocational expert testimony in Social Security Disability hearings. Attends training sessions for continuing education credits towards certification.

**Vocational Counselor and Evaluator**                                       **2006-2008**
Rehabilitation Specialists Group, Inc.                                Phoenix, Arizona

Performed vocational assessments for clients from a variety of sources, including state rehabilitation, Veterans Administration, Federals Workers in vocational rehabilitation process. Coordinated services with clients to provide access to available services. Worked extensively with the Veterans' Administration for Vocational Rehabilitation and Independent Living programs, as a counselor and evaluator. Provided veterans with counsel for return-to-work options and retraining options. Conducted job placement, job analysis, labor market research, and vocational exploration for clients. Attended job development meetings with area companies to explore the labor market. Toured facilities to understand specific jobs available to clients. Managed Vocational Rehabilitation casework for state and federal worker's compensation clients. Attended training sessions for continuing education credits towards certifications. Conducted Loss of Earning Capacity reports on injured workers for state insurers.

Ogren, Jesse                                                                                       Page 2

## Education

## M.S. Vocational Rehabilitation                                                  2006

Dual Concentration: Counseling and Evaluation
University of Wisconsin-Stout - Menomonie, Wisconsin

## B.S. Political Science                                                          2004

University of Wisconsin-Eau Claire Minor: Business Management
Eau Claire, Wisconsin

## Affiliations

- Certified Rehabilitation Counselor by the CRCC                        #00094469

- Licensed Professional Counselor, LPC                State of Wisconsin #5170-125

- American Rehabilitation Economics Association                             Member
  - Registered as a Forensic Vocational Expert

- Previously, IARP
  - Board Member of Vocational Counseling Section

- CRCC CVE Exam Scorer                                                2021-Present

## Copy Editing

- Minnesota's Contribution to Open Heart Surgery by Dr. Paul G. Gannon

Ogren, Jesse                                                                                          Page 3

---

## Testimony as Vocational Expert

- Erin Loth v. Nash-Finch Company. Rolv Slungaard, Wisconsin, September 8, 2017, Deposition
- Chris Henderson  v. Canadian Pacific Railroad. Iowa, Paula Jossart, January 17, 2018, Deposition
- Leslie Gunderson v. Franks, et a. Wisconsin, Dean Rohde, February 21, 2018.
- Vicky Schmidtknecht v. Secura Insurance. Wisconsin, Dean Rohde, April 26, 2018, Deposition
- Brian Andreesen v. Canadian National Railroad, Iowa, Fred Bremseth, May 21, 2018. Deposition
- Nick Houchins v. Canadian Pacific Railroad, Minnesota, Fred Bremseth, May 31, 2018. Trial
- Shawn Flickinger v. Canadian Pacific Railroad, Illinois, Fred Bremseth, July 20, 2018. Deposition
- ECMC v. Rafael Lozada, Southern District New York, Kenneth Baum, August 22, 2018. Trial
- Brian Andreesen v. Canadian National Railroad, Fred Bremseth, September 21, 2018. Trial
- Jackie Campbell v. Auto Owners, Polk County, WI, Dean Rohde, September 26, 2018. Trial
- Tammy Nagel v. Dollar Store, Wisconsin, Michael Brose, October 5, 2018. Deposition
- Leann Greeley v. Artisan and Truckers Casualty Company, Polk County, WI, Jason Whitley, October 9, 2018. Trial
- Michael Garner v. BNSF, Paula Jossart, Maricopa County, Arizona, October 15, 2018. Deposition
- Hiitola, et al. v. Fischer, et al., Wisconsin, Dean Rohde, November 13, 2018. Deposition
- Gayhart v. Canadian Pacific. Western District of Wisconsin, Cortney LeNeave, December 12, 2018. Deposition
- Anderson v. Slaikeu. Polk County, WI, Michael Brose, January 24, 2019. Deposition
- Hendricks vs. Bauer and Safeco. Barron County, WI, Jason Whitley, March 7, 2019. Deposition
- Anderson v. Slaikeu. Polk County, WI, Michael Brose, March 26, 2019. Trial
- Cook v. Nationwide Affinity. Pierce County, WI, Jason Whitley, May 13, 2019. Deposition
- Huppert v. National General Insurance Co. Pierce County, WI, Tracy Tool, May 29, 2019. Trial
- Begy v. Caretakers, LLC. Vilas Co, WI, Tracy Tool, June 3, 2019. Deposition
- Begy v. Caretakers, LLC. Vilas Co, WI, Tracy Tool, June 27, 2019. Trial
- Garner v. Canadian Pacific. Maricopa County, AZ, Paula Jossart, September 26, 2019. Trial
- Yang v. Yang. Hennepin County, MN. Denny Johnson, December 10, 2019. Trial
- Hodgson v. Canadian National Railroad. US District Court for Western District of Wisconsin. Cortney LeNeave, December 11, 2019. Deposition
- Lasher v. Acuity. St. Croix County, WI. Dean Rohde, January 29, 2020. Trial
- Karch v. ABC Insurance Company, Wilson Mutual Insurance Company, Polk County, WI. Mathew Biegert, June 15, 2020. Deposition
- Rust v. Bode, State Farm. Eau Claire County, WI. Robert Parsons, July 17, 2020. Deposition
- Zignego v. Secura Insurance. St. Croix County, WI. Michael Brose, July 28, 2020. Deposition
- Strange v. Fenigor Group, etc. LaCrosse County, WI. Brian Laule, August 25, 2020. Deposition.
- Wilcox v. Wilcox. Barron County, WI. Jonathan Cuskey, September 10, 2020. Trial
- Benson v. Oak Leaf. Eau Claire County, WI. Brian Laule, September 17, 2020. Deposition
- Anderton v. Canadian Pacific Railroad. Scott County, IA. Paula Jossart, September 30, 2020. Deposition
- Flint v. Union Pacific. Omaha, NE, Randy LeNeave, October 21, 2020. Deposition
- Gardner v. Canadian Pacific Railroad. Scott County, IA. Paula Jossart, December 4, 2020. Deposition
- Betsy Liljenberg v. American Family. Burnett County, WI. Russell Nicolet, December 9, 2020. Deposition

Ogren, Jesse                                                                                                    Page 4

- Covarrubias v. BNSF Railway. Douglas County, NE. Randal LaNeave, December 30, 2021. Deposition
- Louis Barquist v. Kwik Trip. Clark County, WI. Brian Laule, January 15, 2021. Deposition
- Hess v. Punch-Hess. Hennepin County, WI. Jack Hicks, January 20, 2021. Trial
- Blank v. Acuity. St. Croix County, WI. Robert Parsons, March 10, 2021. Trial Deposition
- Manley v. Union Pacific Railroad. Harris County, TX. John Roven, March 24, 2021. Deposition
- Kipp v. Shanahan, et al. Vernon County, WI. Chuck Bye, June 29, 2021. Deposition
- Gutherless v. Union Pacific Railroad. US Federal District Court – Nebraska. Randy LaNeave, September 24, 2021. Deposition
- Thompson and State of Wisconsin DHS v. Artisan and Truckers Casualty Company. Chippewa County, WI. Beverly Wickstrom, September 29, 2021. Trial
- Drakeford v. Drakeford. Hennepin County, MN. Adebisi Wilson, October 28, 2021. Trial
- Raspberry v. Union Pacific Railroad. Jackson County, MO. Randy LaNeave, November 11, 2021. Deposition
- Karch v. ABC Insurance, et al. Polk County, WI. Matthew Biegert, December 1, 2021. Trial
- Hayes v. Wisconsin and Southern Railroad. US District Court, Eastern District of Wisconsin. John Magnuson, January 18, 2022. Deposition
- Bonner v. Top Hat, Strong, et al. La Crosse County, WI. Dean Rohde. January 20, 2022. Deposition
- Berry v. Wisconsin Central LTD, Canadian National Railway. United States District Court, Western District of Wisconsin. Paula Jossart. January 28, 2022. Deposition
- Whitacre v. Brothers Bar & Grill, et al. La Crosse County, WI. Robert Parsons. February 14, 2022. Deposition
- Nollett v. BNSF Railway. United States District Court for Colorado. Randal LeNeave. February 21, 2022. Deposition
- Lara v. BNSF Railway. United States District Court for Wyoming. Randal LeNeave. February 23, 2022. Deposition.
- Bonner v. Top Hat. La Crosse County, WI. Dean Rohde. March 21, 2022. Trial Testimony
- Blackmore v. Union Pacific Railroad. United States District Court for Nebraska. Paul Banker. May 9, 2022. Deposition
- Dittrick v. Chicago, Central & Pacific Railroad Company. Iowa District Court for Dubuque County. James Wettermark. May 27, 2022. Deposition.
- Ganster v. Wisconsin Central Limited. Cook County, IL. Ryan Brennan. June 16, 2022. Deposition
- Jarvis v. RCPE. US District Court South Dakota Central Division. John Magnuson. June 20, 2022. Deposition
- Henderson v. Union Pacific Railway. US District Court Western District of Wisconsin. Paul Banker. July 13, 2022. Deposition